This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-41259

JOSHUA CHICAS; JOSE CHICAS, JR.;
JACOB CHICAS; and D. MARIA SCHMIDT,
as Personal Representative of the Wrongful
Death Estate of JOSE CHICAS, Deceased,

 Plaintiffs-Appellees,

v.

BAYERISCHE MOTOREN WERKE AG;
BMW OF NORTH AMERICA, LLC; and
SANDIA AUTOMOTIVE CORP d/b/a
SANDIA BMW,

 Defendants-Appellants.

APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
Matthew J. Wilson, District Court Judge

Durham, Pittard & Spalding, LLP
Rosalind B. Bienvenu
Caren I. Friedman
Justin R. Kaufman
Santa Fe, NM

Hossley & Embry, LLP
Jeffrey T. Embry
Matthew Montgomery
Tyler, TX

for Appellees

Bowman and Brooke LLP
Thomas P. Branigan
Matthew G. Berard
Troy, MI

Rodey, Dickason, Sloan, Akin &
Robb, P.A.
Jeffrey M. Croasdell
Edward Ricco
Jocelyn Drennan
Albuquerque, NM

for Appellants

**MEMORANDUM OPINION**

**BOGARDUS, Judge.**

**{1}** Bayerische Motoren Werke AG, BMW of North America, LLC, and Sandia Automotive Corp. d/b/a Sandia BMW (collectively, BMW) appeal the verdict returned by a jury in favor of Joshua Chicas, Jose Chicas, Jr. (Justin), Jacob Chicas (collectively, Plaintiffs), and D. Maria Schmidt acting as the personal representative for the estate of Jose Chicas Sr. (Jose). BMW asks this Court to order a new trial on Plaintiff's claims of negligence and strict liability, as well as reverse the awards for loss of consortium or grant a new trial on those claims as well. We affirm.

**BACKGROUND**

**{2}** We provide a brief factual background and discuss the facts in more detail as they become relevant to our analysis. This litigation began in 2018, when Plaintiffs brought suit against BMW in connection with Jose's death. Jose worked for an auto body shop at the time of this incident. While at work, Jose drove a customer's BMW X5 sedan (the car) into a sloped parking lot within a fenced enclosure. Upon parking the car, Jose pushed the gear shifter forward into what he believed to be the park position, but which was, in fact, the neutral position. Jose turned the car off and got out with the key fob in his pocket. As he walked behind the car to close the gate, the car started to roll towards him while still in neutral. When Jose noticed the car rolling he tried to brace it and stop its motion with his body, but it rolled over him, and killed him. Plaintiffs filed a complaint against BMW for wrongful death, loss of consortium, personal injury, and punitive damages. A jury found in favor of Plaintiffs, and this appeal followed.

**DISCUSSION**

**I.    The District Court Properly Instructed the Jury**

**{3}** BMW argues that the district court erred when it instructed the jury regarding when manufacturer warnings are needed for both product users and product bystanders. BMW argued that Jose was either a product user or a bystander, but could not be both for the single injury that occurred here. BMW contends the instruction was improper and argues that it is therefore entitled to a new trial. "We review jury instructions de novo to determine whether they correctly state the law and are

supported by the evidence introduced at trial." *Chamberland v. Roswell Osteopathic Clinic, Inc.*, 2001-NMCA-045, ¶ 11, 130 N.M. 532, 27 P.3d. 1019. "A civil case will not be reversed due to error in jury instructions unless the result is fundamentally unjust." *Salopek v. Friedman*, 2013-NMCA-087, ¶ 16, 308 P.3d 139 (internal quotation marks and citation omitted), *overruled on other grounds by Siebert v. Okun*, 2021-NMSC-016, 485 P.3d 1265.

**{4}** At trial, Plaintiffs submitted UJI 13-1402 NMRA, UJI 13-1406 NMRA, and UJI 13-1417 NMRA to the district court under the theory that at the time of his death Jose was both a user of a defective product and a person in the vicinity, and included vicinity language for the proposed instructions. BMW's proposed instructions omitted the vicinity language. Plaintiffs' proposed instructions are as follows:

> The supplier of a product has a duty to use ordinary care to avoid a foreseeable risk of injury caused by a condition of the product or manner in which it is used. This duty is owed to persons who can reasonably be expected to use the product and to persons who can reasonably be expected to be in the vicinity during the use of the product.

*See* UJI 13-1402.

> Under the "products liability" claim, a supplier—including a manufacturer, distributor, or dealer—in the business of putting a product on the market is liable for harm caused by an unreasonable risk of injury resulting from a condition of the product or from a manner of its use. Such a risk makes the product defective. This rule applies even though all possible care has been used by the supplier in putting the product on the market.
>
> The liability of the supplier is to persons whom the supplier can reasonably expect to use the product and to persons whom the supplier can reasonably expect to be in the vicinity during the use of the product.

*See* UJI 13-1406.

> To satisfy the duty to warn a warning must be communicated by a means which can reasonably be expected to reach persons using the product and persons in the vicinity during the use of the product.

*See* UJI 13-1417.

**{5}** BMW opposed the vicinity language and argued that Jose "doesn't get to be injured as both a user and a bystander." The district court adopted the vicinity language proposed by Plaintiffs for each injury instruction stating, "[T]here is evidence to support the fact that [Jose] was both a user; and then when he left the vehicle at some point, he was a bystander or a pedestrian."

**{6}** Jury instructions that track the language of the uniform jury instruction are "presumptively valid." *State v. Lucero*, 2017-NMSC-008, ¶ 30, 389 P.3d 1039. We are unpersuaded by BMW's argument that Jose could not have been both a user of the car and then subsequently a bystander for purposes of the jury instructions when he stood behind the car. BMW's plain language argument is not persuasive because the language of each proposed jury instruction contains the word "and" as opposed to "or," covering both categories of persons, and, in a situation such as this, a person in both roles during a given sequence of events. Here, the district court concluded that Jose was a user and then a bystander in relation to the car, and we see nothing in the language of the uniform instruction that rules out giving both instructions under these facts. Further, Defendants failed to cite any authority in New Mexico that would preclude the use of this language in the jury instruction. *See State v. Vaughn*, 2005-NMCA-076, ¶ 42, 137 N.M. 674, 114 P.3d 354 ("Where a party cites no authority to support an argument, we may assume no such authority exists."). The district court, in compliance with UJI 13-1402, UJI 13-1406, and UJI 14-1417, properly instructed the jury with the elements necessary to determine whether both applied under the circumstances. We find no error. Because we conclude that no reversible error occurred, we cannot conclude the jury's verdict was fundamentally unjust. *See Salopek*, 2013-NMCA-087, ¶ 16.

## II. The District Court Did Not Abuse its Discretion Regarding Evidence

**{7}** Next, we review BMW's claim that the district court abused its discretion when it admitted evidence of incidents involving rollaway vehicles with similar and different BMW models, and that BMW was prejudiced by these admissions. BMW's primary argument is that Plaintiff failed to show that other reported incidents involving the X5 F15 models and BMW 7 Series sedans were substantially similar to the incident from which this litigation arose. Because evidence concerning the BMW 7 Series sedan as well as the X5 F15 models is relevant to Plaintiffs' claim, and because the evidence is substantially similar to the facts surrounding Jose's death, we affirm the district court's admission of the evidence.

**{8}** "We review the admission of evidence for an abuse of discretion." *Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 11, 314 P.3d 688 (internal quotation marks and citation omitted). "Evidence of prior accidents or injuries is relevant where the circumstances surrounding the prior incidents are substantially similar to the circumstances surrounding the incident at issue." *Williams v. BNSF Ry. Co.*, 2015-NMCA-109, ¶ 16, 359 P.3d 158. This Court has stated that "evidence of prior accidents or injuries is not relevant to prove a specific act of negligence, but may be relevant to show either the existence of a danger or hazard or a defendant's knowledge of the danger." *Id.* "The burden of demonstrating substantial similarity lies with the proponent of the evidence." *Id.*

**{9}** Before trial, BMW moved to exclude evidence of other incidents and argued that if such evidence was admitted, Plaintiffs "had to show that circumstances were substantially similar to the circumstances of the present case."

**{10}**    Plaintiffs contend the offered evidence established that when BMW was designing the 7 Series sedan, it was on notice that "the 7 Series BMW is rolling away despite the fact we intended to have a warning that would stop that from happening". Plaintiffs played deposition video of Mr. Lindner, the BMW AG engineer that led the design team for the X5 models, who confirmed that the 7 Series models had a "warning concept similar to the X5 . . . an internal audible warning signal and a visual warning symbol inside the vehicle," as opposed to an external warning as recommended by the Society of Automotive Engineers. BMW then recalled those models to fix the mechanical issue causing the rollaway vehicles, which Plaintiffs argued was a concession that a warning alone was inadequate. Plaintiffs also provided evidence of rollaway incidents with the X5 F15 models when drivers inadvertently left the models in neutral. BMW corporate representative and engineer, Mr. Aviles acknowledged eighteen rollaway incidents in which drivers inadvertently left the vehicles in neutral. Lastly, Plaintiffs provided evidence of a driver, Ms. King, whose X5 F15 rolled away when she thought the car was in park, but by inference must have been in neutral. Plaintiffs provided deposition testimony of Ms. King, who recalled an incident when she believed to have placed her car in park before going into a restaurant only to have her car roll backward and hit two parked cars. Plaintiffs argued that the evidence presented for both models was relevant to show that BMW was on notice that audio and visual warnings alone were not sufficient to prevent driver error leading to rollaway accidents.

**{11}**    The district court stated that the evidence regarding the 7 Series sedan, as well as the X5 F15, was relevant and was not unduly prejudicial. The district court found that Plaintiffs had laid the proper foundation to establish similarity on the issue of the insufficiency of audio and visual warnings as the driver was exiting to alert the driver to the problem.

**{12}**    Rule 11-403 NMRA allows the district court to exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice. "Our courts have repeatedly recognized that the trial court is in the best position to evaluate the effect of trial proceedings on the jury." *Norwest Bank N.M., N.A. v. Chrysler Corp.*, 1999-NMCA-070, ¶ 39, 127 N.M. 397, 981 P.2d 1215. "The purpose of Rule 11-403 is not to guard against any prejudice whatsoever, but only against the danger of *unfair* prejudice." *State v. Otto*, 2007-NMSC-012, ¶ 16, 141 N.M. 443, 157 P.3d 8. (alteration, internal quotation marks, and citation omitted). Here, the evidence offered by Plaintiffs of incidents with 7 Series sedans as well as with X5 F15 models is relevant to show that BMW was on notice of the question of whether audio and visual warnings as a driver exited the vehicle were sufficient to alert the driver to correct the gearshift setting and to thereby avoid rollaways. On this narrow issue, argued by Plaintiffs, we cannot say that the district court abused its discretion in finding this evidence substantially similar to what happened here. The district court, therefore, did not abuse its discretion in admitting this evidence.

### III.    Loss of Consortium

**{13}** BMW lastly argues that it is entitled to judgment as a matter of law on the loss of consortium claims brought by Jose's sons, or alternatively, a new trial on those claims. BMW contends that the evidence did not establish that there was a mutually dependent relationship between Jose and his three sons to justify recovery on these claims. BMW also contends that even if loss of consortium was proven, the damages awarded by the jury were excessive and it is entitled to a new trial. We do not agree with BMW.

**{14}** "The legal availability of relief depends on the factual determination of whether a plaintiff has a significant enough relational bond with the victim of a tort to recover for loss of consortium." *Fitzjerrell v. City of Gallup ex rel. Gallup Police Dep't*, 2003-NMCA-125, ¶ 13, 134 N.M. 492, 79 P.3d 836.

**{15}** To recover these damages, Plaintiffs must show that they and the injured party shared a relationship that was "sufficiently close," *see id.* ¶ 14, and also establish that a duty of care exists. *See Lozoya v. Sanchez*, 2003-NMSC-009, ¶ 15, 133 N.M. 579, 66 P.3d 948, *abrogated on other grounds by Heath v. La Mariana Apartments*, 2008-NMSC-017, ¶ 21, 143 N.M. 657. The tortfeasor owes a duty of care to the claimant if it is foreseeable that the harm caused to the injured party would affect the relationship between injured party and the claimant. *Id.* Because BMW addresses only the first element, a relationship that is sufficiently close, we need not address whether a duty of care exists.

**{16}** The *Lozoya* court, faced with this issue, developed a multi-factor test to determine whether a relationship is sufficiently close. *See id.* ¶ 27. Those factors are:

> [T]he duration of the relationship, the degree of mutual dependence, the extent of common contributions to a life together, the extent and quality of shared experience, and whether the plaintiff and the injured person were members of the same household, their emotional reliance on each other, the particulars of their day[-]to[-]day relationship, and the manner in which they related to each other in attending to life's mundane requirements.

*Id.* (omission, internal quotation marks, and citation omitted). In *Wachocki v. Bernalillo County Sheriff's Department*, our Supreme Court determined that although those factors "may be helpful in the context of some relationships" we should strive to have a more "uniform analysis applicable to all relationships," and concluded that mutual dependence is the essence of a loss of consortium claim. 2011-NMSC-039, ¶¶ 9-10, 150 N.M. 650, 265 P.3d 701. In reaching this conclusion, the Court examined two cases that had demonstrated a mutually dependent relationship. *See id.* ¶ 10. The *Wachocki* Court considered *Lozoya*, which involved unmarried cohabitants who had children together, jointly ran a household, and made life decisions together and had a long-term commitment to one another. *Wachocki*, 2011-NMSC-039, ¶ 10; *see Lozoya*, 2003-NMSC-009, ¶ 9. The *Wachocki* Court also reviewed *Fernandez v. Walgreen Hasting Co.*, 1998-NMSC-039, ¶¶ 4, 32, 126 N.M. 263, 968, P.2d 774, in which a grandparent, who was her grandchild's caregiver, recovered for loss of consortium of the grandchild. *Wachocki*, 2011-NMSC-039, ¶ 10.

**{17}** The *Wachocki* Court agreed that both of those cases demonstrated mutual dependence because "the parties relied on the relationship and could not enjoy life in the same way once the relationship was severed." *Id.* In contrast, however, the claimant in *Wachocki* was the brother of the injured party and although the brothers "split bills and shared household chores, socialized together and relied on each other for friendship" our Supreme Court held that the factual findings of the district court did not establish that the mutual relationship was "sufficiently close to permit recovery for loss of consortium." *Id.* ¶¶ 10, 11.

**{18}** With that precedent in mind, we turn to BMW's argument on appeal. BMW argues that the evidence presented at trial fails to establish mutual dependence—relying on *Silva v. Lovelace Health System, Inc.* 2014-NMCA-086, 331 P.3d 958 to support its contention that the evidence was insufficient. In *Silva*, this Court found that the decedent's relationship with her parents, although extremely close, was insufficient to establish mutual dependence because the decedent "was not a member of her parents' household" and "was not involved in her parents' day-to-day decisions or fulfillment of everyday requirements" *Id.* ¶¶ 41-42.

**{19}** We are unpersuaded that the facts in *Silva* are like the facts in this case. Unlike the plaintiffs in *Silva*, all three sons lived with their father until the time of his death. *See* 2014-NMCA-086, ¶ 42. The testimony presented at trial established that Jacob, Joshua, and Justin were involved in Jose's "day-to-day decisions or fulfillment of everyday requirements," contrary to the facts in *Silva*. *See id.* The two older Plaintiffs, Justin and Joshua, worked alongside Jose at the auto body shop. The three of them rode to work together and had meals together during the workday. Justin moved into an apartment for about a year but then moved back home because he missed Jose. The youngest Plaintiff, Jacob, was still in high school at the time of Jose's death and testified that his father took care of him as he was "gearing towards college." Jacob also testified that he felt lost without Jose's guidance. The sons recall spending time with Jose at home watching soccer, being together in the kitchen, or making jokes with one another constantly. They prepared food together, watched TV, and saw Jose every day

**{20}** Jacob, Joshua, and Justin were not mere visitors or occasional guests in Jose's home—rather the evidence established a mutually dependent relationship between Jose and his sons. *See Fitzjerrell*, 2003-NMCA-125, ¶¶ 12-13 (stating that loss of consortium claims require a close and intimate relationship with decedent, which must be factually determined by the finder of fact with guidance from the court); *see Lozoya*, 2003-NMSC-009, ¶¶ 14-31 (noting that the Court established a new standard for establishing loss of consortium that considered cohabitation, mutual dependence, and sharing in day-to-day experiences). Based on the foregoing, we conclude that the extraordinarily close relationship between Jose and his sons demonstrate the mutual dependence necessary to support their loss of consortium claims

**{21}** Lastly, we address BMW's claim that the damages were excessive, and that BMW should be granted a new trial. A jury's award of damages will be upheld unless "the amount awarded is so grossly out of proportion to the injury received as to shock

the conscience." *Martinez v. Ponderosa Prods., Inc.*, 1988-NMCA-115, ¶ 6, 108 N.M. 385, 772 P.2d 1308. "In determining whether a jury verdict is excessive, we do not reweigh the evidence but determine whether the verdict is excessive as a matter of law. The jury's verdict is presumed to be correct." *Salopek*, 2013-NMCA-087, ¶ 30 (internal quotation marks and citation omitted). "When the jury makes a determination and the trial court approves, the amount awarded in dollars stands in the strongest position known in the law." *Ennis v. Kmart Corp.* 2001-NMCA-068, ¶ 27, 131 N.M. 32, 33 P.3d 32 (internal quotation marks and citation omitted).

**{22}** BMW disputes the amount of damages awarded to Plaintiffs, $1.75 million to each son, as excessive because BMW argues that "[t]here is nothing in the evidence relating to the loss of consortium that comes close" to supporting the amount awarded. BMW argues that the disproportionality between the evidence and the verdict shocks the conscience of the court. Again, we are unpersuaded. "There is no fixed standard for measuring the value of a life, and, as in personal injury cases, wide latitude is allowed for the exercise of the judgment of the jury in fixing the amount of such an award." *Baca v. Baca*, 1970-NMCA-090, ¶ 28, 81 N.M. 734, 472 P.2d 997. We therefore defer to findings of the jury, and consequently find that BMW is not entitled to a new trial, as the damages awarded to Plaintiffs were not excessive, nor did it shock the conscience of this Court.

**CONCLUSION**

**{23}** For the foregoing reasons, we affirm.

**{24}** **IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**JANE B. YOHALEM, Judge**