# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2010-NMSC-042

Filing Date: August 18, 2010

Docket No. 31,538

STATE OF NEW MEXICO,

      Plaintiff-Appellee,

v.

CHRISTOPHER BRANCH,

      Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
Stephen D. Pfeffer, District Judge

Aarons Law Firm, P.C.
Stephen D. Aarons
Santa Fe, NM

for Appellant

Gary K. King, Attorney General
Max W. Shepherd, Assistant Attorney General
Santa Fe, NM

for Appellee

## OPINION

**SERNA, Justice.**

**{1}** Pursuant to Rule 12-102(A)(1) NMRA, Christopher Branch (Defendant) is before this Court on direct appeal from his conviction for first-degree murder. He raises two issues on appeal: (1) whether the district court erred in admitting evidence of Defendant's prior conviction for robbery, and (2) whether the predicate felonies on which the jury was instructed constituted an impermissible variance to the indictment. We hold that the district court erred when it admitted evidence of Defendant's prior robbery conviction, in violation of Rule 11-404(B) NMRA. Given the ample evidence supporting the conviction, however,

1

the error was harmless. We also hold that the addition of predicate felonies supporting the felony murder charge to those set forth in the indictment was a permissible variance as it did not prejudice Defendant's substantial rights. Accordingly, we affirm.

## I.    FACTUAL BACKGROUND AND PROCEEDINGS BELOW

**{2}**    On the morning of April 27, 2007, Defendant and his girlfriend, Contessa Salazar, were arguing in Defendant's trailer home in Mendanales, New Mexico and became physically violent. Ms. Salazar locked Defendant outside of his trailer and Defendant left in his red pickup truck. Ms. Salazar, fearing that Defendant would return, decided to walk to her grandmother's house. While Ms. Salazar was walking on U.S. Highway 84, Defendant drove up to her and demanded that she get into the truck. When Ms. Salazar refused, Defendant opened the driver side door and tried to pull her into the truck. He was unsuccessful and Ms. Salazar continued to walk away. Defendant then put his truck in reverse and drove back towards Ms. Salazar, hitting her with the open door and causing her to fall to the ground. Defendant then drove the truck's front wheels over Ms. Salazar's legs and stomach. Ms. Salazar stood up, using a street sign to stabilize herself. Defendant then began driving around her in circles at a fast rate of speed.

**{3}**    Ronnie Greene was driving a semi-truck on U.S. Highway 84 when he observed a red pickup truck driving abnormally on the shoulder. As Mr. Greene approached, he observed Ms. Salazar holding onto the street sign and mouthing the words, "Help me." Mr. Greene and Brian Peterson, another truck driver, stopped on the shoulder of the highway to assist Ms. Salazar. Mr. Greene exited his truck and saw Ms. Salazar running towards him as the red pickup truck made a U-turn. Mr. Greene approached Ms. Salazar and observed that she was bleeding from her leg, was missing a shoe and sock, and appeared to be in pain. Mr. Greene saw the red pickup truck driving towards them and they "ran for [their] lives." Mr. Greene was assisting Ms. Salazar onto the catwalk of his semi-truck when Defendant drove straight at them at a rate of about 45 miles per hour, coming within inches of hitting Mr. Greene. Mr. Greene climbed onto his flat-bed trailer and saw Defendant driving towards the semi-truck a second time, at a speed of about 30 miles per hour. Defendant drove by Mr. Greene and Ms. Salazar, turned around, and drove towards them a third time, at a speed of about 45 miles per hour.

**{4}**    "Michael Rutkowski (Victim) and his wife had been 'driving down U.S. Highway 84 . . . [when victim] pull[ed] over to help.' Victim parked their vehicle between the two semi-trucks and exited his car to assist Ms. Salazar and Mr. Greene." Defendant drove by the parked vehicles, swerved to his right, and struck Victim, projecting him several feet. Mr. Greene and Victim's wife both testified that Defendant did not slow down as he approached Victim and purposefully swerved to hit Victim. After Defendant struck Victim, he turned his truck around and left the scene. Victim died at the scene.

**{5}**    Defendant was charged with an open count of first-degree murder, contrary to NMSA 1978, Section 30-2-1A(1)(A) (1994), under three theories: depraved mind murder,

2

deliberate murder, and felony murder. He was also charged with attempted first-degree murder, contrary to NMSA 1978, Section 30-28-1 (1963) and Section 30-2-1A, or in the alternative, aggravated battery against a household member with a deadly weapon, contrary to NMSA 1978, Section 30-3-16(C) (1995); aggravated assault against a household member with a deadly weapon, contrary to NMSA 1978, Section 30-3-13(A)(2) (1995); aggravated assault with a deadly weapon against Mr. Greene, contrary to NMSA 1978, Section 30-3-2(C) (1963); kidnapping, contrary to NMSA 1978, Section 30-4-1(A)(4) (2003); and aggravated fleeing a law enforcement officer, contrary to NMSA 1978, Section 30-22-1.1 (2003). At the close of evidence, the district court entered a directed verdict of not guilty for the kidnapping charge. After deliberations, the jury found Defendant guilty of all other counts. Defendant appeals his conviction for first-degree murder.

## II.     DISCUSSION

### A.     The Admission of Defendant's Prior Robbery Conviction Violated Rule 11-404(b) but Was Harmless Error

{6}      Before opening statements, the State informed the court that it intended to admit Defendant's prior robbery conviction. Defendant argued that admitting the robbery conviction would violate Rule 11-404(B), as the conviction would be offered to show propensity. The State asserted that the robbery conviction was relevant because Defendant committed the robbery in the same condition as he committed the crimes in this case—while he was under the influence of drugs and alcohol. The State also contended that the fact that Defendant "elected to keep doing drugs, [and] keep drinking" after he was ordered to undergo treatment as part of his plea agreement for the robbery charge showed that Defendant was cognizant of how drugs and alcohol affected him, tending to refute Defendant's theory of being impaired by the drugs and alcohol at the time he committed the crime. The district court allowed the prior robbery conviction to be admitted, reasoning that "the robbery arguably show[ed] that . . . [Defendant was] supposed to get treatment and arguably shows that whether drunk or high . . ., he [did] this purposeful act at the same time[] that [he was] intoxicated", and concluding that it was not evidence of propensity to commit the alleged crimes.

{7}      During trial, the State called Defendant's mother (Mother) and questioned her about a restraining order that she obtained against Defendant two days prior to Victim's murder. On cross-examination, Defendant asked Mother if the restraining order was the first time she had filed charges against Defendant. Mother testified that she had filed robbery charges against Defendant for stealing her car keys and leaving without her permission. During re-direct examination, the State informed the court that Defendant had raised the issue of the prior robbery conviction and, since Mother had testified that she wanted help for her son, the State should be allowed to question Mother about the help that was available to Defendant after the robbery conviction plea agreement, in which addiction treatment was ordered. Defendant objected under Rule 11-404(B). In response, the State argued that Defendant's refusal to undergo treatment was evidence of his state of mind, as "he didn't care what he

3

did or who he did it to." The district court granted the State's request, allowing the prosecutor to question Mother about the robbery conviction and the ordered treatment accompanying the conviction. The State asked Mother if Defendant was required to participate in a drug and alcohol treatment program as a consequence of his robbery conviction, to which Mother replied, "[I]t never went through. The Court never approved it." In order to refresh her recollection, the State approached Mother with Defendant's judgment and sentence ("J & S") for his robbery conviction in which the court ordered Defendant to attend an in-patient treatment program. Over Defendant's objection, the J&S was admitted.

**1.      Defendant's Robbery Conviction Was Inadmissible Under Rule 11-404(B)**

**{8}**      Rule 11-404(B) provides in part that

> [e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

"This list is not exhaustive and evidence of other wrongs may be admissible on alternative relevant bases so long as it is not admitted to prove conformity with character." *State v. Otto*, 2007-NMSC-012, ¶ 10, 141 N.M. 443, 157 P.3d 8 (internal quotation marks and citation omitted). "[T]he proponent of the evidence is required to identify and articulate the consequential fact to which the evidence is directed," and even if the evidence is relevant for a reason other than propensity, the requirements of Rule 11-403 must still be satisfied in order for the evidence to be admitted. *State v. Gallegos*, 2007-NMSC-007, ¶ 22, 141 N.M. 185, 152 P.3d 828.

**{9}**      We review the admission of evidence for an abuse of discretion. *State v. Sena*, 2008-NMSC-053, ¶ 12, 144 N.M. 821, 192 P.3d 1198. An abuse of discretion "occurs when the court's ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion . . . unless we can characterize [its ruling] as clearly untenable or not justified by reason." *Id.* (internal quotation marks and citation omitted).

**{10}**      The State argues that Defendant's refusal to undergo the ordered treatment, and the fact that he committed purposeful acts while under the influence of drugs or alcohol, established his depraved state of mind at the time of the murder. We disagree. Defendant's conduct that led to his robbery conviction occurred about five years prior to the killing. The only conceivable way in which this conduct could establish Defendant's state of mind on the day of Victim's murder would be to impermissibly conclude that because Defendant acted in such a way years ago, his actions on the day of the killing were in conformity with that conduct. In other words, Defendant had the *propensity* to act dangerously when he was

4

under the influence of drugs or alcohol and this *propensity* contributed to Victim's death. In fact, the State argued in such terms: "Defendant was *an individual* that simply did not care to try to address his drug and alcohol problem, a problem that the evidence established contributed to the death of [Victim]." The purpose of introducing the prior robbery conviction was to establish that, because Defendant was under the influence of drugs and alcohol when he committed the robbery, he is the *type of individual* who acts dangerously when under the influence, and his actions on the day of Victim's murder were in conformity with his character. This is the very type of propensity evidence that Rule 11-404(B) prohibits. If we were to allow this type of evidence to be admitted, then we would run "'the risk that a jury will convict for crimes other than those charged—or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment.'" *Gallegos*, 2007-NMSC-007, ¶ 21 (quoting *Old Chief v. United States*, 519 U.S. 172, 181 (1997)).

**{11}** Additionally, the State's reliance on *State v. Sandoval*, 88 N.M. 267, 539 P.2d 1029 (Ct. App. 1975), is misplaced, as the case is distinguishable. In that case, the evidence at issue was that "during the hours and minutes immediately preceding the accident," the defendant was "showing off [in a] 'hot-rod' type [of] vehicle" by driving up and down the streets at high speeds, straddling lanes, turning corners very rapidly, and making illegal U-turns. *Id.* at 269, 539 P.2d at 1031. On appeal, the defendant argued that the district court erred when it admitted evidence of his driving conduct throughout the entire day of the incident which led to his vehicular homicide conviction. *Id.* at 270, 539 P.2d at 1032. The Court of Appeals disagreed, reasoning that the record contained evidence of the defendant's conduct *immediately before* the incident and thus admissible under Rule 11-404(B), as it showed the defendant's mental state and lack of an accident. *Id.* at 270, 539 P.2d at 1032.

**{12}** When comparing the two cases, the time between the previous conduct and the conduct which led to the respective convictions is the critical difference. It can readily be shown that the defendant's reckless driving in *Sandoval*, which occurred *immediately before* the incident, could be evidence of the defendant's mental state at the time of the incident because not much time had transpired between the incidents. In fact, it could be reasonably concluded that the defendant's reckless driving on that day was one continuous act of driving, beginning from the hours before the incident.

**{13}** The same cannot be said in the instant case. Approximately five years had transpired between Defendant's robbery conviction and the incident that led to Victim's murder. It is illogical to conclude that Defendant's state of mind five years prior could establish his state of mind on the day he murdered Victim. While we are not defining how close in time a prior incident must be to the incident in question in order to establish a defendant's state of mind at the pertinent time, we do emphasize that the time between incidents is an important factor to consider when determining the admissibility of a prior crime, wrong, or act under Rule 11-404(B) to establish a defendant's state of mind. The closer in time a prior act is to the act at issue, the more likely the prior act can establish a defendant's state of mind at the relevant time, while the further the two incidents are apart in time, the less likely the prior act can establish a defendant's state of mind.

5

**{14}** Evidence of Defendant's prior robbery conviction was used to establish that Defendant acted in conformity with such actions surrounding the robbery at the time he murdered Victim. Therefore, Defendant's prior robbery conviction was inadmissible propensity evidence under Rule 11-404(B), and thus the district court abused its discretion by admitting it.

**2.      Admission of Defendant's Prior Robbery Conviction Was Harmless Error**

**{15}** Having concluded that the district court erred when it admitted Defendant's prior robbery conviction, we now must determine if the error was harmless. Given that the error in this case was an evidentiary error, we employ the non-constitutional standard for the harmless error analysis. "[A] non-constitutional error is harmless when there is no reasonable *probability* the error affected the verdict." *State v. Barr*, 2009-NMSC-024, ¶ 53, 146 N.M. 301, 210 P.3d 198. Reviewing courts consider three factors when determining whether an error is harmless: "[W]hether there is: (1) substantial evidence to support the conviction without reference to the improperly admitted evidence; (2) such a disproportionate volume of permissible evidence that, in comparison, the amount of improper evidence will appear minuscule; and (3) no substantial conflicting evidence to discredit the State's testimony." *Id.* ¶ 56 (footnote omitted). These factors "are considered in conjunction with one another . . . [and] provide a reviewing court with a reliable basis for determining whether an error is harmless." *Id.* ¶ 55.

**{16}** After careful examination of the record and consideration of the three factors identified in *Barr*, we determine that there is no reasonable probability that the improperly admitted evidence affected the verdict. Even if evidence of Defendant's prior robbery conviction and his subsequent refusal to undergo treatment had been excluded, the record still establishes that there was substantial evidence to support Defendant's convictions. Primarily, the testimony of Ms. Salazar establishes not only Defendant's abusive behavior in the hours leading up to the murder, but also a detailed account of how Defendant drove around her in circles, struck her with the opened door of the truck, ran over parts of her body, and nearly hit her and Mr. Greene while driving at a fast rate of speed. The testimony of the three eye witnesses corroborated Ms. Salazar's testimony and added additional detail. Mr. Greene testified that Defendant drove straight toward them at a rate of speed of about forty-five miles per hour, came within inches of hitting them, and then proceeded to drive straight toward them two additional two times. Also, Mr. Greene and Victim's wife both testified that Defendant drove straight toward Victim and purposefully swerved his truck in order to hit Victim. Mr. Greene also testified that, after striking Victim, Defendant fled the scene. The testimony from the eye witnesses provides substantial evidence to support each of Defendant's convictions, and not one of the convictions relied on the inadmissible robbery conviction. This substantial amount of evidence—the eye-witness testimony from four different witnesses—also leads us to conclude that the second factor identified in *Barr* weighs in favor of harmlessness, because when comparing this evidence with the inadmissible evidence of Defendant's prior robbery conviction, there is a disproportionate volume of admissible evidence and the lone piece of inadmissible evidence appears

6

minuscule. Finally, we do not find substantial evidence that discredited the State's case.

**{17}** After weighing the factors, we conclude that there was no reasonable probability that the admission of evidence of the robbery conviction affected the verdict, and thus the district court's error in admitting it was harmless.

**B.      The Addition of the Predicate Felonies to The Felony Murder Charge Was a Permissible Variance**

**{18}** Defendant was charged by indictment with an open count of first-degree murder under three theories: depraved mind murder, premeditated murder, and felony murder. The indictment only listed attempted murder and kidnapping as predicate felonies for the felony murder charge. After the conclusion of the State's evidence, the district court granted the State's motion to include aggravated assault with a deadly weapon against both Ms. Salazar and Mr. Greene as predicate felonies. In addition to the original predicate felonies, the district court instructed the jury that it could find Defendant guilty of felony murder if the State proved beyond a reasonable doubt that "[D]efendant caused the death of [Victim] during the commission of . . . Aggravated Assault against a Household Member with respect to Contessa Salazar and/or Aggravated Assault with respect to Ronnie Greene."

**{19}** On appeal, Defendant argues that the grand jury limited the scope of the felony murder charge to the predicate felonies of attempted murder and kidnapping and that "[a] last minute ploy to broaden the indictment at the close of evidence, by including two aggravated assault counts into the list of predicate offenses within the felony murder elements instruction, requires reversal as a matter of law." We disagree.

> Rule 5-204(C) provides:
>
> No variance between those allegations of a complaint, indictment, information or any supplemental pleading which state the particulars of the offense, whether amended or not, and the evidence offered in support thereof shall be grounds for acquittal of the defendant unless such variance prejudices substantial rights of the defendant. The court may at any time allow the indictment or information to be amended in respect to any variance to conform to the evidence. . .

*See also State v. Roman*, 1998-NMCA-132, ¶ 11, 125 N.M. 688, 964 P.2d 852 ("[I]t is permissible to amend an information to conform to evidence introduced in support of the charge made in the information."). "Rule 5-204(C) can[not] be used to impose an *entirely new charge* against a defendant after the close of testimony." *Id.* ¶ 9 (emphasis added). Also, "[a] variance is not fatal unless the accused cannot reasonably anticipate from the indictment what the nature of the proof against him will be." *State v. Marquez*, 1998-NMCA-010, ¶ 20, 124 N.M. 409, 951 P.2d 1070 (filed 1997). We review a district court's

7

interpretation and application of Rule 5-204 de novo. *Roman,* 1998-NMCA-132 ¶ 8.

**{20}** Under Rule 5-204(C), if the substantial rights of a defendant are prejudiced by a variance, then such a variance may provide the grounds for an acquittal. Thus, in order to determine if it was error for the district court to instruct the jury as to the additional predicate felonies, we must ascertain whether Defendant's substantial rights were prejudiced. Defendant claims he was prejudiced because the variance added (1) a victim (Mr. Greene) and (2) an element (the temporal nexus with respect to the aggravated assaults predicate felonies) to the predicate felonies.

**{21}** Defendant is correct that an additional victim was added to the predicate felonies of the felony murder charge. In Count I of the indictment, kidnapping and attempted murder were the only predicate felonies of the felony murder charge, and Counts II and V specify Ms. Salazar as the victim of both these charges. Therefore, Mr. Greene was not identified in the indictment as a victim of any of the predicate felonies with respect to the felony murder charge. He was, however, included in the jury instructions regarding the felony murder charge by virtue of the addition of the aggravated assault with respect to him as a predicate felony. Defendant argues that he was prejudiced because "[t]he pre-trial interview and trial cross-examination of Mr. Greene and others might have progressed differently had counsel been given notice that the assault on him by motor vehicle would also be treated as a predicate offense." We disagree and conclude that Defendant's mere speculation of how he would have conducted his defense differently does not rise to the level of prejudice that is required for an acquittal.

**{22}** The jury could have concluded that when Defendant drove towards Ms. Salazar and Mr. Greene at a high rate of speed, coming within inches of striking them, Defendant had committed attempted murder of Ms. Salazar and aggravated assault against both Ms. Salazar and Mr. Greene. Given that the attempted murder and aggravated assault charges arose from the same underlying conduct, Defendant was put on notice and could "reasonably anticipate from the indictment what the nature of proof against him [would] be." *See Marquez*, 1998-NMCA-010, ¶ 20. Because Defendant was aware that he had to defend against the aggravated assault charge with respect to Mr. Greene, Defendant was not prejudiced by the designation of the already-existing aggravated assault charge as a predicate felony.

**{23}** Regarding the "temporal nexus" argument, Defendant contends that since the aggravated assaults against Ms. Salazar and Mr. Greene were not included as predicate felonies in the felony murder charge, he "had no reason to show how the assaults on Ms. Salazar and Mr. Greene ceased when they climbed up the safe haven of his tractor trailer." Defendant argues that the "[c]ross-examination[s] of [Ms.] Salazar and [Mr.] Greene and [Victim's wife] and other eyewitnesses might have shown that [Ms.] Salazar and [Mr.] Greene were no longer in harm's way, their assaults by motor vehicle having ceased well *before*, not *during*, the tragic homicide."

**{24}** For the same reasons that the variance's addition of another victim to the predicate

8

felonies did not amount to a prejudice of Defendant's substantial rights, we conclude that Defendant's substantial rights were likewise not prejudiced by the addition of a "temporal nexus" element. The felony murder charge, in the indictment stated that Defendant murdered Victim "while in the commission of or attempt to commit a felony, to wit: attempted murder or Kidnapping . . . ." Therefore, Defendant had notice of both the felony murder charge with the predicate felony being the attempted murder against Ms. Salazar, and the "temporal nexus" element, i.e., that Victim's murder had to have occurred "while in the commission of" the attempted murder. Given that Defendant had notice as to the "temporal nexus" element, Defendant's argument relies on the distinction between the attempted murder of Ms. Salazar and aggravated assaults against either Ms. Salazar or Mr. Greene.

**{25}** Under the facts of this case, there is no meaningful difference between the attempted murder of Ms. Salazar and aggravated assault against either Ms. Salazar or Mr. Greene. As we have previously stated, the attempted murder and aggravated assault charges may have arisen from the same underlying conduct—when Defendant almost struck both Ms. Salazar and Mr. Greene with his truck as he drove towards them at a high rate of speed. The preparation for defending against the felony murder charge, where the predicate felony was attempted murder of Ms. Salazar, should have been the same as defending against a felony murder charge with aggravated assaults against Ms. Salazar and Mr. Greene as the predicate felonies. Defendant was not prejudiced by the addition of the aggravated assaults as predicate felonies with respect to the additional "temporal nexus" element. Defendant's substantial rights were not prejudiced when the district court allowed for the variance.

**{26}** We hold that the additional predicate felonies on which the jury was instructed did not amount to an impermissible variance to the indictment, and thus the district court did not error by granting the amendment.

## III. CONCLUSION

**{27}** The district court erred when it admitted evidence of Defendant's prior robbery conviction as it was inadmissible propensity evidence under Rule 11-404(B). However, given the substantial evidence supporting the district court's conviction of Defendant without reference to the impermissible evidence, the district court's error was harmless. The additional predicate felonies on which the jury was instructed did not amount to an impermissible variance to the indictment as Defendant's substantial rights were not prejudiced. Defendant's conviction is affirmed.

**{28}** **IT IS SO ORDERED**.

_____

**PATRICIO M. SERNA, Justice**

**WE CONCUR:**

_____

**CHARLES W. DANIELS, Chief Justice**


_____

**PETRA JIMENEZ MAES, Justice**


_____

**RICHARD C. BOSSON, Justice**


_____

**EDWARD L. CHÁVEZ, Justice**

**Topic Index for _State v. Branch_, Docket No. 31,538**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-HE | Harmless Error |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-FM | Felony Murder |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CL-GJ | Grand Jury |
| CL-IN | Indictment |
| CL-JI | Jury Instructions |
| | |
| **EV** | **EVIDENCE** |
| EV-AE | Admissibility of Evidence |
| EV-CE | Character Evidence |
| EV-PC | Prior Convictions or Judgments |
| | |
| **JI** | **JURY INSTRUCTIONS** |
| JI-JI | Jury Instructions, General |