This memorandum opinion was not selected for publication in the New Mexico Reports.  Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions.  Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                                         **NO. 28,191**

**HERBERT YAZZIE,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF MCKINLEY COUNTY**
**Grant L. Foutz, District Judge**

Gary K. King, Attorney General
Ann M. Harvey, Assistant Attorney General
Santa Fe, NM

for Appellee

Jacqueline L. Cooper, Acting Chief Public Defender
Susan Roth, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**GARCIA, Judge.**

This appeal follows a retrial of various charges arising from a Navajo untwining

ceremony in which Defendant was accused of sexually assaulting his daughter-in-law (Victim). Defendant appeals his latest convictions for second-degree criminal sexual penetration (CSP II) and intimidation of a witness. Defendant raises the following claims on appeal: (1) the district court erred by allowing the charging period to be expanded during trial to a period "between April 1 and May 26, 2000"; (2) the district court erred in finding Victim competent to testify; (3) Defendant's testimony from his first trial was not admissible during the second trial after Defendant chose not to testify at the second trial; (4) a mistrial should have been declared when a witness testified that Defendant had been "sent away"; (5) there was insufficient evidence to support Defendant's convictions for CSP II and intimidation of a witness; (6) the district court erred when it refused to admit all of Victim's post-natal medical records as exhibits; and (7) cumulative error warrants reversal. We affirm Defendant's convictions.

**BACKGROUND**

Pursuant to the criminal information, jury instructions and evidence presented at the first trial in this case, the untwining ceremony and alleged sexual assault occurred "during the month of May, 2000," or more specifically, "on or about May 17, 2000." The case was remanded for a second trial. Prior to the second trial in

2

2007, Defendant obtained Victim's medical records establishing that Victim was in the hospital suffering from labor pains on May 17, 2000. Defendant then moved to prevent the State from changing the date of the offense, and the State moved to amend the criminal information to conform to the original criminal complaint and Victim's testimony at the second trial. The district court allowed the State to amend the criminal information to conform to the original criminal complaint and Victim's testimony at the second trial.

Due to Victim's lack of memory regarding certain details that occurred around the time of the incident, Defendant moved to strike Victim's testimony as incompetent under Rule 11-601 NMRA. The district court noted that Victim's limited education, fear of the legal process, confusion in understanding many questions, and lack of memory in answering questions did not mean she was lying or incompetent to testify. Defendant's motion to strike Victim's testimony was denied. Defendant testified on his own behalf during the first trial. During the State's case-in-chief at the second trial, portions of the transcripts from the first trial were read to the jury despite Defendant's objection. In these portions of the transcript, Defendant admitted taking Victim to Hamburger Hill to perform the untwining ceremony. He admitted asking Victim to spread her legs during the ceremony, lifting her skirt, and putting herbs on

her legs. He also admitted that he had performed the untwining ceremony for two of Victim's previous children prior to their births. Defendant testified that he was not paid for these ceremonial services. During this testimony at the first trial, Defendant denied pushing Victim back into the car and raping her. Defendant also testified that after the ceremony, Victim threatened him and told him that if he did not give Victim money, she would tell the officers that she had been raped. Defendant chose not to testify at the second trial.

At the second trial, one of the State's investigators was asked about Victim's statements of concern about fearing Defendant. In response, the investigator stated that Victim was not as upset during later meetings "because [Defendant] had been sent away." At that point, a "shushing" sound was made that was later attributed to the State, Defendant's counsel and the district court. After cross-examination by defense counsel, Defendant moved for a mistrial.

Finally, Defendant moved to admit Victim's medical and dental records for dates that occurred just prior to the alleged incident and for Victim's post-natal medical care after the birth of her child. After individually reviewing each record and allowing argument, the district court admitted four of the requested records as trial exhibits, identified as Defendant Exhibits B, E, K, and N. Although the remaining medical records were not admitted as trial exhibits, Defendant was not precluded from

questioning Victim about all of her medical records. A stipulation regarding Victim's medical records was also read to the jury that addressed information and circumstances resulting from certain pre-natal medical records.

**DISCUSSION**

**I.      Amendment to the Criminal Information**

**A.      Application of Rule 5-204(C) NMRA**

We review an amendment to the criminal information under Rule 5-204(C) NMRA de novo. *See State v. Roman*, 1998-NMCA-132, ¶ 8, 125 N.M. 688, 964 P.2d 852 (recognizing that a de novo standard of review applies to the interpretation and application of Rule 5-204). This Court has recognized that it is permissible to allow an amendment to the criminal information in order to conform to the evidence introduced at trial to support a charge. *See State v. Dombos*, 2008-NMCA-035, ¶¶ 24-26, 143 N.M. 668, 180 P.3d 675 (holding that the district court did not err in allowing the indictment to be amended during trial to enlarge the time of the occurrence where the defendant knew the nature of the charges, the identity of the victim, and that the charges were alleged to have occurred during the period in which he and the victim lived together in Alamogordo); *see also State v. Marquez*, 1998-NMCA-010, ¶¶ 18-21, 124 N.M. 409, 951 P.2d 1070 (holding that the district court did not err in allowing the information to be amended during trial when the juvenile victim's

5

testimony established that the incident occurred on her twin cousins' tenth birthday party in 1993, rather than in 1992, as initially charged). Furthermore, a variance between the criminal information and the evidence presented "is not fatal unless the accused cannot reasonably anticipate from the indictment [or criminal information] what the nature of the proof against him will be." *State v. Branch*, 2010-NMSC-042, ¶ 19, 148 N.M. 601, 241 P.3d 602 (internal quotation marks and citation omitted).

Rule 5-204(C) provides the following:

> No variance between those allegations of a complaint, indictment, information or any supplemental pleading which state the particulars of the offense, whether amended or not, and the evidence offered in support thereof shall be grounds for the acquittal of the defendant unless such variance prejudices substantial rights of the defendant. The court may at any time allow the indictment or information to be amended in respect to any variance to conform to the evidence. If the court finds that the defendant has been prejudiced by an amendment, the court may postpone the trial or grant such other relief as may be proper under the circumstances.

The first inquiry under Rule 5-204(C) is whether Defendant's substantial rights have been prejudiced by the district court's ruling that allowed the State to amend the criminal information to conform to the evidence presented at the second trial. *See Branch,* 2010-NMSC-042, ¶ 20 (reasoning that if the substantial rights of a defendant are prejudiced by an amendment of the criminal information or indictment, the amendment may provide the grounds for an acquittal under Rule 5-204(C)). It is Defendant's burden to show that prejudice resulted from the allowance of an

6

amendment to the criminal pleadings. *See Dombos*, 2008-NMCA-035, ¶¶ 25-26 (reasoning that the defendant has the burden of establishing prejudice through a specific claim of prejudice). Defendant asserts that he was prejudiced because he was denied the opportunity to investigate Defendant's whereabouts during the months of April and May 2000. Defendant alleged that such an investigation may have developed additional theories to show that a rape did not occur.

Defendant's arguments are not logical and have no support from the record in this case. Victim originally asserted that the untwining ceremony occurred in April 2000 when she notified authorities and filed for a protective order against Defendant. The State also asserted that the incident occurred in April 2000 when it filed the original criminal complaint and amended criminal complaint. The confusion arose when the pleadings were amended again to identify the month of May 2000, and the witnesses, including Defendant, testified during the first trial that the untwining ceremony occurred on May 17, 2000. Defendant admitted that an untwining ceremony actually took place involving Victim, but denied that any sexual assault occurred. Although uncertainty existed regarding the actual date of the untwining ceremony, neither party disputed that the charged acts were alleged to have occurred following an untwining ceremony that took place prior to May 27, 2000, when Victim delivered her new baby. Procedurally, Defendant moved to prevent the State from

changing the date of the offense, but did not assert any type of alibi defense or ask the district court for a postponement of trial in order to conduct additional discovery. In effect, Defendant alleged that he was prejudiced because everyone identified the incorrect date for the untwining ceremony at the first trial, and he appeared to be arguing that the State should not be able to correct this error at the second trial under Rule 5-204(C).

Defendant relies on *Roman* to argue that the district court erred in allowing the State to amend the charging period to conform to the evidence and correct the mistake made regarding the date of the untwining ceremony. 1998-NMCA-132, ¶ 9. Defendant's reliance on *Roman* is misplaced. *Roman* dealt with an attempt by the State to amend the pleadings during trial to assert a completely new charge against the defendant. *Id.* ¶¶ 1, 5-6. Moreover, this Court concluded that the district court erred in allowing the State to add a new charge after the close of testimony under Rule 5-204. *Id.* ¶ 9. In *Roman*, we specifically cited *Marquez* with approval regarding whether the State may request permission to amend the criminal information to conform to the evidence under circumstances that involve the original charges actually contained in the criminal information against a defendant. *Roman*, 1998-NMCA-132, ¶ 11. *Marquez* specifically allowed the date of the alleged offense to be amended by one year to conform to the evidence at trial. 1998-NMCA-010, ¶¶ 19-21.

8

Additionally, *Marquez* noted that "[t]he mere assertion of prejudice, without more, is insufficient to establish prejudicial error warranting reversal of a conviction." *Id.* ¶ 20 (internal quotation marks and citation omitted).

Defendant had three years to prepare his case prior to the first trial and nearly four additional years to develop new theories prior to the second trial. Although Defendant now asserts the desire to develop an alibi defense, an alibi defense was never asserted or offered at either trial. As there was no dispute that the charges concerned acts that allegedly occurred following the untwining ceremony, the material issue in this case fell upon the credibility of the witnesses, especially Victim and Defendant, not whether the untwining ceremony actually occurred in April rather than May 2000. Defendant's assertion that the expansion of the charging period to include April 2000 affected his ability to develop theories to show that Victim was not truthful or credible seven years after the ceremony occurred was nothing more than mere speculation. *See Branch*, 2010-NMSC-042, ¶ 21 (reasoning that a defendant's "mere speculation regarding how he would have conducted his defense differently does not rise to the level of prejudice that is required for an acquittal"); *see also In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 10, 121 N.M. 562, 915 P.2d 318 ("An assertion of prejudice is not a showing of prejudice.").

Alleging a last-minute alibi defense even though it is undisputed that Defendant

9

was present and participated in the untwining ceremony is equally suspect and unpersuasive. *See Dombos*, 2008-NMCA-035, ¶ 26 (rejecting the defendant's general claim of prejudice regarding the expansion of the dates of the occurrence where the defendant knew that the charges concerned acts that allegedly occurred during the nineteen-day period that he lived with the victim in Alamogordo); *see also Marquez*, 1998-NMCA-010, ¶¶ 19, 21 (determining that the defendant was not prejudiced by the amendment of the date of the occurrence where he did not rely on an alibi defense in the district court below). Defendant did not even request a continuance or more time to develop his newly claimed theories, but asked the district court to prohibit the expansion of the charging period to conform to the evidence under Rule 5-204(C). Effectively, Defendant wanted the charges dismissed rather than have the criminal information amended to conform to the evidence. As a result, a showing of actual prejudice to Defendant was not made. We determine that the district court did not err by allowing the State to amend the criminal information under Rule 5-204(C) to expand the charging period to recognize that the untwining ceremony occurred in April or May 2000 pursuant to the evidence provided at trial.

**B.      Defendant's Due Process Notice of Charges**

Defendant also asserts that he was neither provided reasonable notice of the new charging period nor provided with a fair opportunity to defend pursuant to the

Fifth and Fourteenth Amendment of the United States Constitution and Article II, Sections 14 and 18 of the New Mexico Constitution. Citing *State v. Baldonado*, 1998-NMCA-040, 124 N.M. 745, 955 P.2d 214, Defendant asserted that his due process rights were violated. "We review questions of constitutional law and constitutional rights, such as due process protections, de novo." *State v. Montoya*, 2010-NMCA- 067, ¶ 11, 148 N.M. 495, 238 P.3d 369.

Although it is not the appellate court's responsibility to develop a defendant's theory and argument, we will attempt to address the issue and authority raised in Defendant's brief. *See State v. Ortiz*, 2009-NMCA-092, ¶ 32, 146 N.M. 873, 215 P.3d 811 (noting that it is the party's responsibility to connect legal theories to the pertinent elements and the factual support for those elements, and that this Court may decline to review undeveloped arguments on appeal). As previously noted, Defendant was originally notified that charged acts were alleged to have occurred in April 2000 pursuant to the domestic petition filed against him in August 2000, the criminal complaint and affidavit for arrest warrant filed in February 2002, and the amended criminal complaint filed in August 2002. Although the charging period was later amended and modified, Defendant was fully aware that the focus of the charges concerned acts that allegedly occurred following the Navajo untwining ceremony. Victim continuously alleged that she was raped after Defendant took her to

11

Hamburger Hill to perform the untwining ceremony.

Citing *Baldonado*, Defendant attempts to frame his due process issue as a failure in "narrowing [of] the time frame of the charges" that caused potential prejudice. *See Baldonado*, 1998-NMCA-040, ¶¶ 26, 34 (reasoning that the district court must consider "the reasonableness of the State's efforts at narrowing the time of the indictment and measure[] the potential prejudice to the defendant of the time frame chosen by the State"). Defendant also asserts that the State was unreasonable in its failure to be "forthcoming with information about the date of the incident" and that he was unable to develop a credible alibi defense.

The record indicates that the time frame in which the untwining ceremony occurred was always alleged to have been in either April or May 2000, prior to the birth of Victim's child. Victim's original belief and testimony that the untwining ceremony occurred on May 17, 2000, was first challenged by Defendant on June 11, 2007, when Victim's medical records indicated that she was hospitalized with labor pains on May 17, 2000. Four days later, the State then moved to expand the charging period to include both months, April and May 2000, for the date of the untwining ceremony. Despite Defendant's assertion that "[t]he date of the offense was critical," the uncertainty in this case was not whether the untwining ceremony took place, but involved the parties' inability to reconstruct exactly when it took place. Both Victim

12

and the State incorrectly narrowed this date down to May 17, 2000, prior to the first trial, and Defendant also utilized this incorrect date in his testimony. The expanded charging period in this case simply reinstates the original pleading dates that identified either April or May 2000 as the believed dates when the untwining ceremony occurred. The circumstances in the present case are dramatically different from the facts and analysis in *Baldonado*. The exact date of the untwining ceremony was not critical. Despite Defendant's last-minute assertion of a possible alibi defense, such a defense is inconsistent with Defendant's undisputed testimony that he attended and participated in the untwining ceremony as alleged by Victim.

In *Baldonado*, the defendant asserted that the two-year charging period was too broad to provide reasonable notice of the charges and also made it impossible to prepare an alibi defense. 1998-NMCA-040, ¶ 6. This Court agreed that the defendant was potentially prejudiced by the two-year span of the indictment and remanded the matter to address the adequacy of the charging documents and the prejudice to the defendant. *Id.* ¶¶ 2, 33-34. Unlike *Baldonado*, Defendant does not assert that the charging period is too broad. He also fails to provide any specific authority establishing that an expansion of the charging period by one month, to be consistent with Victim's testimony and original allegations, constitutes error. Absent cited authority supporting Defendant's argument, we assume no such authority exists. *See*

13

*State v. Vaughn*, 2005-NMCA-076, ¶ 42, 137 N.M. 674, 114 P.3d 354 ("Where a party cites no authority to support an argument, we may assume no such authority exists.").

Additionally, Defendant fails to provide citations to the record or authority to support his allegation that the State was not forthcoming about the date of the incident, and as a result, we assume no such authority exists. *See id.* Factually, the district court recognized that the State was aware that the May 17, 2000, date appeared incorrect and that Victim would be attempting to identify a more accurate date regarding when the untwining ceremony actually occurred. It is undisputed that this period of uncertainty lingered for several days before trial. Under the circumstances, the district court did not err in its determination that the State was sufficiently forthcoming in dealing with the date(s) of the incident after Defendant filed his motion to estop a few days before the second trial. We affirm the district court's decision to grant the State's motion to amend the criminal information under Rule 5-204(C).

**C.    Evidence From First Trial Regarding Date of Untwining Ceremony**

Defendant asserts that the district court erred when it denied his motion to admit the admissions of a party-opponent and allow him to use transcripts and other evidence from the first trial to establish that the State used the date of May 17, 2000, as the date for the untwining ceremony. The district court did not admit the actual

transcripts and documentation as admissions by a party-opponent. The court did, however, allow Defendant to use the evidence and transcripts on cross-examination to establish that the witnesses previously testified to an incorrect date at a "prior hearing" as well as the incorrect date in Victim's affidavit and past statements. We review the admission of evidence by the district court under an abuse of discretion standard. *State v. Stanley*, 2001-NMSC-037, ¶ 5, 131 N.M. 368, 37 P.3d 85 (recognizing that the admission of evidence is within the sound discretion of the district court). "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the [district] court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted).

Defendant fails to provide any authority in support of his position that the district court abused its discretion when it denied Defendant's motion to admit certain admissions of a party-opponent but allowed the use of these prior statements and documentation for the cross-examination of witnesses. *See Vaughn*, 2005-NMCA-076, ¶ 42 ("Where a party cites no authority to support an argument, we may assume no such authority exists."). Because Defendant was allowed to use the desired evidence at trial for the purposes of impeachment and to attack the credibility

15

of witnesses regarding their prior inconsistent statements under oath at the first trial as well as through their prior affidavits and other court documents, we conclude that no error was made. The district court did not abuse its discretion when it denied Defendant's motion to admit these admissions by Victim but allowed their use for impeachment purposes.

**II.     Competency of Victim to Testify**

Defendant asserts that Victim was not competent to testify pursuant to Rule 11-601. We review the district court's ruling for an abuse of discretion. *See State v. Hueglin*, 2000-NMCA-106, ¶¶ 21-22, 130 N.M. 54, 16 P.3d 1113 (noting that the appellate court applies an abuse of discretion standard when it reviews whether the minimum standard for competency of a witness has been met).

Under Rule 11-601, every person is presumed competent to be a witness except as otherwise provided in the rules of evidence. "Ordinarily the party challenging competency bears the burden to show [that a] witness is incompetent." *Apodaca v. AAA Gas Co.*, 2003-NMCA-085, ¶ 62, 134 N.M. 77, 73 P.3d 215. Furthermore, "[w]hen an individual's competency to testify is challenged, the district courts are merely required to conduct an inquiry in order to ensure that he or she meets a minimum standard, such that a reasonable person could put any credence in their testimony." *State v. Ruiz*, 2007-NMCA-014, ¶ 23, 141 N.M. 53, 150 P.3d 1003

(internal quotation marks and citation omitted). Once a witness meets this minimum standard, the district court must convert "questions of competency into questions of credibility." *Hueglin*, 2000-NMCA-106, ¶ 22 (internal quotation marks and citation omitted). "To be competent, a witness is required to have a basic understanding of the difference between telling the truth and lying, coupled with an awareness that lying is wrong and may result in some sort of punishment." *Id.* ¶ 24 (internal quotation marks and citations omitted).

Defendant argues that Victim was not competent to testify because she responded, "I don't remember" and "I don't know" to several questions, answered another question about being under oath with "[w]hat does under oath mean," and appeared to have a "poor grasp of basic vocabulary." Although these issues were concerning to the district court, the court did not find Victim incompetent to testify. The court noted that Victim's limited ninth grade education, fear of the legal process, confusion in understanding many questions, and lack of memory in answering questions did not mean that she was lying or incompetent to testify. The court also noted the potential need for an interpreter, overruled Defendant's objection to having an interpreter available for Victim, and later questioned whether Victim needed the assistance of an interpreter.

Despite the recognition of concern regarding Victim's ability to understand

Defendant's questions on cross-examination and the potential need for an interpreter, Victim testified on the record that being sworn in meant "to tell the truth," that she often could not understand what defense counsel was saying, and that a lie means when you are "not telling the truth." However, the second factor regarding Victim's knowledge of any punishment for lying under oath was never adequately addressed in the record. Defendant failed to establish whether Victim was aware that lying under oath may result in some sort of punishment. As a result, Defendant did not establish that Victim fell below the minimum standard for competency to testify at trial. The district court did not abuse its discretion when it denied Defendant's motion to find Victim incompetent to testify pursuant to Rule 11-601.

**III.    Admission of Defendant's Prior Testimony**

Defendant asserts that the district court erred when it granted the State's motion to admit the admission of a party-opponent and use Defendant's testimony from the first trial as part of the State's evidence during the second trial. Again, we review the admission of evidence by the district court under an abuse of discretion standard. *Stanley*, 2001-NMSC-037, ¶ 5. Where the admission of evidence involves an application of law, we review the legal issue de novo. *See State v. Mendez*, 2010-NMSC-044, ¶ 15, 148 N.M. 761, 242 P.3d 328 (applying a de novo standard of review where admissibility of evidence involved a question of law).

At trial, Defendant asserted that his prior statements during the first trial were not admissions because they did not state a contrary position or serve as an admission of any element of the crimes charged, and the statements were not relevant under Rule 11-403 NMRA. The State filed a memorandum that provided federal and other authority in support of its position that Defendant's admissions at the first trial could be used at the second trial. Defendant has failed to provide contrary authority to address whether Defendant's prior testimony is an admission of a party-opponent under Rule 11-801(D)(2) NMRA. Although Defendant argues that his prior admissions during the first trial cannot be used by the State under Rule 11-801(D)(2), this Court is not obligated to search for authority supporting Defendant's position. *See In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) ("We assume where arguments in briefs are unsupported by cited authority, counsel after diligent search, was unable to find any supporting authority. We therefore will not do this research for counsel."). The State has specifically directed this Court to numerous cases, including *In re Nelson*, 79 N.M. 779, 781, 450 P.2d 188, 190 (1969), as authority for admitting the prior testimony of a party-opponent as an admission. As a result, we rely upon the State's authority as persuasive and need not address Defendant's argument further. *See Vaughn*, 2005-NMCA-076, ¶ 42 ("Where a party cites no authority to support an argument, we may assume no such authority exists.").

19

Defendant also argues that his prior testimony was not relevant under Rule 11-403 because it did not state a contrary position or serve as an admission of any element of the crimes charged. Again, Defendant provides no authority for his position that evidence is not relevant unless it states a contrary position or serves as an admission of any element of the crime and we assume no such authority exists. *See Vaughn*, 2005-NMCA-076, ¶ 42. Defendant's prior testimony placed him at the scene of the untwining ceremony and established that he performed the ceremony alone on Hamburger Hill with nobody else present except Victim. Defendant's testimony eliminated the issue of whether Victim fabricated the untwining ceremony and established that Defendant had the opportunity to be alone with Victim during the ceremony where the sexual assault was alleged to have occurred. These factors are relevant to charges in this case as well as possible defenses that might be raised. Defendant never asserted that any prejudicial effect of his prior testimony at the first trial substantially outweighed its probative value, and we do not address this issue. As a result, the district court did not abuse its discretion when it found Defendant's prior testimony to be relevant despite Defendant's Rule 11-403 objection during trial.

**IV.    Denial of Mistrial Regarding Witness Statement About Defendant**

At the second trial, one of the State's investigators was asked about Victim's statements of concern about fearing Defendant. Defendant moved for a mistrial after

20

the State's investigator responded that Victim had "calmed down because [Defendant] had been sent away." This motion was not made immediately but was made after all questioning was completed and the witness left the witness stand. Neither a cautionary nor a curative instruction was requested by the parties, and none was offered or issued by the district court when it denied Defendant's motion. The district court also noted that it did not know what the jury did or did not hear regarding this "sent away" comment made by the investigator.

The district court's ruling on a motion for a mistrial is addressed to the sound discretion of the district court and will not be disturbed absent a showing of an abuse of discretion. *State v. Gonzales*, 2000-NMSC-028, ¶ 35, 129 N.M. 556, 11 P.3d 131. We distinguish between remarks inadvertently made by a witness and testimony intentionally elicited by the State. *Id.* ¶ 39. Where a witness statement was not elicited by the State and was inadvertent, the offer to give a curative instruction "is sufficient to cure any prejudicial effect." *State v. Fry*, 2006-NMSC-001, ¶ 53, 138 N.M. 700, 126 P.3d 516. Where remarks are intentionally elicited by the State, "we must determine whether there is a reasonable probability that the improperly admitted evidence could have induced the jury's verdict." *Gonzales*, 2000-NMSC-028, ¶ 39. Mitigating factors may still be considered persuasive even where the court did not attempt to instruct the jury not to consider the improperly admitted evidence. *See id.*

¶ 40.

In the present case, the State did not intentionally elicit the investigator's comment. Instead, a "shushing" sound was made following the comment that was later attributed to the State, Defendant's counsel, and the district court. Furthermore, the investigator only testified that Defendant "had been sent away." Although this vague reference could be interpreted to mean that Defendant was "incarcerated" when he was sent away, other interpretations are equally plausible. The vagueness of the words actually used by the witness must be considered when analyzing the mitigating factors regarding improper testimony. *See State v. Gilbert*, 99 N.M. 316, 318, 657 P.2d 1165, 1167 (1982) (considering whether an "oblique reference" to the defendant "being booked" on an investigation made it apparent to the jury that the defendant was wanted for some other criminal offense). The district court's finding that jurors may or may not have even heard the witness's words must also be considered as a mitigating factor. *See State v. McDonald*, 1998-NMSC-034, ¶ 27, 126 N.M. 44, 966 P.2d 752. The timing of Defendant's motion for mistrial after the witness completed his testimony and was excused also made the possibility for a cautionary or curative instruction more problematic. In addition, no further reference to Defendant's status as being "sent away" was brought up or emphasized by the State or any other witness. *See id*. ¶¶ 27-28 (reasoning that a lack of emphasis on an improper statement by the

witness or the State is a mitigating factor). These cumulative mitigating factors support the district court's denial of Defendant's motion for a mistrial, and any prejudice to Defendant appears to be purely speculative. *See In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 10 (holding that "[a]n assertion of prejudice is not a showing of prejudice"). The unsolicited, vague statement regarding Defendant being "sent away" that may not have been heard by the jury and was never referenced again during trial would not reasonably establish the level of prejudice necessary to have induced the jury's verdict. The district court did not abuse its discretion when it denied Defendant's motion for a mistrial despite its failure to offer a later cautionary or curative instruction after the witness had been excused.

**V.      Sufficiency of the Evidence**

Defendant raises a challenge to the sufficiency of the evidence to support both convictions in this case. "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Riley*, 2010-NMSC-005, ¶ 12, 147 N.M. 557, 226 P.3d 656 (internal quotation marks and citation omitted). "In applying this standard, an appellate court review[s] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor

23

of the verdict." *Id.* (internal quotation marks and citation omitted). "In reviewing the evidence, the relevant question is whether any rational jury could have found each element of the crime to be established beyond a reasonable doubt." *Id. (*emphasis omitted) (internal quotation marks and citation omitted). The reviewing court does not substitute its judgment for that of the jury, and "[c]ontrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts." *Rojo*, 1999-NMSC-001, ¶ 19. Nor will this Court "evaluate the evidence to determine whether some hypothesis could be designed which is consistent with a finding of innocence." *State v. Graham*, 2005-NMSC-004, ¶ 13, 137 N.M. 197, 109 P.3d 285 (internal quotation marks and citation omitted).

Defendant asserts that insufficient evidence supported the CSP II conviction because the State failed to factually prove the necessary mental anguish or personal injury to Victim. Defendant also attacks the credibility of Victim's testimony, citing *State v. Boyer*, 103 N.M. 655, 712 P.2d 1 (Ct. App. 1985). Defendant also cites conflicting evidence and asks this Court to focus on the level of judicial scrutiny essential for a criminal conviction as another basis to attack his conviction for intimidation of a witness. Citing *Boyer* once again, Defendant asserts that the State failed to meet its burden for the intimidation of a witness charge. *Id.*

Defendant fails to identify or present the facts that were relevant to support the

24

charges he now attacks. "Defendant unreasonably asks this Court to perform a blanket review of [a specific] element of [each] offense . . . and without pointing to evidence on the record, Defendant is essentially asking this Court to re-weigh the evidence against him. Neither role is appropriate for an appellate court on direct appeal." *State v. Gallegos*, 2009-NMSC-017, ¶ 31, 146 N.M. 88, 206 P.3d 993; *see State v. Gipson*, 2009-NMCA-053, ¶ 4, 146 N.M. 202, 207 P.3d 1179 (noting that "[w]e do not reweigh the evidence or substitute our judgment for that of the fact finder as long as there is sufficient evidence to support the verdict").

Moreover, there is substantial evidence in support of the jury's verdict. At trial, the evidence established that Defendant used physical force during the sexual assault, causing bruising, and Victim adequately expressed her resulting fear of Defendant when testifying that he threatened her after the incident. Victim further testified that Defendant threatened her to remain silent and told her that he would destroy her family. As a result, sufficient evidence exists to show that Victim suffered physical injury and mental anguish as a result of the sexual assault. In addition, Defendant's threats after the assault were sufficient to support a conviction of intimidation of a witness. We will not second guess the jury regarding the credibility of Victim's testimony on appeal. *See Gipson*, 2009-NMCA-053, ¶ 4. Sufficient evidence exists to affirm both convictions.

## VI. Post-Natal Medical Records

Defendant argued that a theory of his defense was made unavailable to him as a result of the district court's ruling that refused to admit all of Victim's post-natal medical records offered by Defendant. Again, we review the partial admission of these medical records for an abuse of discretion. *Stanley*, 2001-NMSC-037, ¶ 5.

Defendant agrees that he was allowed to cross-examine Victim regarding her post-natal medical records and read portions of the records into the record during trial. The district court allowed Defendant to cross-examine witnesses regarding any relevant information in Victim's post-natal medical records. During cross-examination and closing argument, Defendant discussed these records and pointed out Victim's happiness and lack of concern as reflected in her post-natal medical records despite her lack of memory on cross-examination. A stipulation regarding Victim's medical records was also read to the jury, and one post-natal record was actually admitted after an individualized in-camera review by the district court found that this specific record addressed the issue of mental anguish. The State argued that the remaining records should not be admitted into evidence due to potential confusion and prejudicial references to Victim's personal and medical information, as well as specific testing that would be prejudicial.

This Court will not second guess the district court regarding its efforts to

exclude irrelevant or prejudicial information contained in Victim's medical records. Defendant argued that the entire set of medical records should be admitted and made no effort to limit the information in any manner to address the State's argument regarding irrelevant personal and medical information, as well as standard procedures to test for STDs and hepatitis. The district court properly balanced these competing interests by allowing Defendant to use the relevant medical information to support his defense and exclude the irrelevant and prejudicial information contained in Victim's post-natal medical records. We conclude that the district court did not abuse its discretion when it limited the use of Victim's post-natal medical records and refused to admit the fully un-redacted medical records offered by Defendant.

**VII.   Cumulative Error**

In considering each of Defendant's arguments, we have determined that no error was made by the district court. As a result, the cumulative error doctrine does not apply. *See State v. Salas*, 2010-NMSC-028, ¶ 40, 148 N.M. 313, 236 P.3d 32.

**CONCLUSION**

For the reasons stated herein, we affirm Defendant's convictions for CSP II and intimidation of a witness.

**IT IS SO ORDERED.**

_____
**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**RODERICK T. KENNEDY, Judge**

28